UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BETTY BRIDGEWATER and JERRY P. WILLIAMS, Individually and on behalf of a Class of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-1758-B ECF |
| DOUBLE DIAMOND-DELAWARE, INC., DOUBLE DIAMOND, INC., R. MIKE WARD, FRED CURRAN, WHITE BLUFF CLUB CORP., WHITE BLUFF GOLF, INC., THE INN AT WHITE BLUFF, INC., WHITE BLUFF MARINA, INC., THE LIGHTHOUSE DINING CO., and THE WHITE BLUFF 19TH HOLE, INC. | § § § § § § § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion to dismiss, or alternatively for a stay (doc. 15). Defendants request that the Court to abstain from exercising jurisdiction under the *Colorado River* doctrine pending appeal of a state court judgment regarding the legality of certain underlying assessments under Texas law. Alternatively, Defendants seek dismissal of the Complaint for failure to satisfy the applicable federal pleading standards set forth in Rules 8(a) and 9(b) or to state a claim for relief pursuant to Rule 12(b)(6). Defendants also seek to dismiss the Complaint pursuant to Rule 12(b)(1) on the grounds that plaintiffs lack standing to assert their RICO claims. For the reasons

set forth below, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.  (doc. 15).

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs Betty Bridgewater and Jerry P. Williams filed this class action suit on behalf of all property owners in the White Bluff Resort alleging that the Defendants, who developed, managed, or marketed the property fraudulently assessed fees on property owners in violation of the federal RICO statute, 18 U.S.C. § 1962(c) and (d), and Texas law.  The White Bluff Resort includes over 6,000 lots near Lake Whitney, Texas and the plaintiff class includes all "White Bluff current and former property owners who from January 2004 to the date this action is certified" paid the challenged assessments.  (doc. 1, ¶¶ 17, 19, 73).

Defendant Double Diamond-Delaware, Inc. ("DD Delaware") is a privately-held, for-profit company in the business of resort development that operates in Texas through its affiliated Texas corporation, Double Diamond, Inc. (collectively "Double Diamond").    (*Id.* at ¶ 16).   Double Diamond purchases large tracts of undeveloped property, which it subdivides into lots that are marketed and sold to individuals as investment or retirement property.  (*Id.* at ¶ 18).  The property at issue in this suit is part of a planned community known as the White Bluff Resort at Lake Whitney, Texas ("White Bluff")[2].  Purchasers of Double Diamond property were not obligated to

---

[1]  The Court takes its factual account from Plaintiffs' Complaint (doc. 1).  *Martin K Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (stating that in deciding a motion to dismiss, all well-pleaded factual allegations are taken as true).  *See also Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993) (taking allegations as true when evaluating sufficiency of a complaint under Rule 9(b)).

[2]  Double Diamond has also acquired and marketed property, following a similar business model, in three other locations in Texas and one in Pennsylvania.  Only the property and assessments related to White Bluff are at issue in this suit.  (doc. 1, ¶ 17).

build on or improve their lots,[3] but they were required, as a condition of ownership, to become members of the property owners association.  (*Id.*).  As owners and members of the property owners association, the Plaintiffs in this action were required to pay annual dues to the property owners association and were subject to the recurring mandatory assessments at the foundation of this dispute.  (*Id.*).  Plaintiffs describe what they contend to be a scheme for improperly assessing the WBPOA for expenses incurred by other Double Diamond entities and misrepresenting the need for and use of those funds.  (*Id.* at ¶¶ 34, 38).

Defendant Double Diamond established subsidiaries (also defendants) to own and operate resort amenities at White Bluff.  (*Id.* at ¶ 20).  The amenities include "two 18-hole golf courses, the Lighthouse restaurant, a spa, The Inn, and a marina."  (*Id.*).  Many of Plaintiffs' claims are rooted in the alleged transfer of funds from  the White Bluff Property Owners' Association ("WBPOA") to various Double Diamond entities and other allegedly improper assessments made by the WBPOA for the benefit of those entities.  (*Id.* at ¶¶ 39, 43, 47, 53, 63).

The WBPOA was formed as a non-profit association in 1990 pursuant to a filing made by Defendant Ward, who was also an officer of Double Diamond.  (*Id.* at ¶ 21).  Plaintiffs allege that the "WBPOA is currently, and has always been, controlled by Double Diamond" and that "Defendants Ward and Curran have been directors of the WBPOA since its inception, while simultaneously holding positions as officers of Double Diamond."  (*Id.* at ¶ 23).  The WBPOA, not a defendant in this action, is governed by a board of six directors, three of which are Double Diamond officers.  (*Id.* at ¶ 22).  Plaintiffs allege that Double Diamond has maintained control of

---

[3] Of the approximately 6,000 lots in the White Bluff Resort, 600-700 homes have been constructed.  (doc. 1, ¶ 19).

the WBPOA through a 1997 agreement that gave Defendant Ward the right to cast the deciding vote in the event of a deadlock and through Mr. Ward's decisive influence in choosing the property owners who fill the remaining three seats on the WBPOA board. (*Id.* at ¶¶ 22, 23). Plaintiffs also allege that Defendants have taken a number of other steps to maintain Double Diamond's dominance on the WBPOA board, such as changing the date and time of the annual meeting and aggressively opposing and punishing any attempt to fill seats on the board with candidates other than those chosen by Ward. (*Id.* at ¶¶ 25-29). Further, "[o]n at least three occasions, Double Diamond has sued members of the WBPOA for defamation when members engaged in activities that publicly criticized the actions of the WBPOA board, Double Diamond and/or Defendant Ward."[4] (*Id.* at ¶ 29). Plaintiffs allege that these actions were part of a broader scheme by Double Diamond to maintain control of and use the non-profit WBPOA to generate revenue for its other business interests, which are the exclusive service providers or owners of amenities at the resort. Defendants carried out the "illegal assessment scheme," Plaintiffs allege, "in connection with the conduct" of an Enterprise consisting of the board of directors of the WBPOA, Defendants Ward and Curran, and Double Diamond (the "Enterprise"). (*Id.* at ¶ 81).

A.     *The Challenged Assessments and Transfers*

Plaintiffs allege that the scheme to assert Double Diamond's control over the WBPOA board resulted in a series of assessments and fees that were used for purposes of enriching Double Diamond or Ward instead of the purposes authorized by the WBPOA's bylaws. (*Id.* at ¶¶ 30-34). Through

---

[4] Counterclaims raised in one of those defamation lawsuits, against WBPOA member Daniel Saturn, set the stage for the abstention argument discussed in part III A of this memorandum opinion and order. In response to a defamation lawsuit, Mr. Saturn raised counterclaims for, among other relief, a declaration that certain of the assessments made by the WBPOA were invalid. The judgment in Mr. Saturn's favor is now on appeal before the Fifth Court of Appeals in Dallas.

these assessments, Plaintiffs allege that the WBPOA collected approximately $4,000,000.  (*Id.* at ¶ 38).  Many of the assessments and fees ostensibly supported the "hospitality program," including a mandatory "food and beverage" assessment[5] program.  (*Id.* at ¶ 39).  The hospitality program was announced by letter of January 2004 as a means to fund the amenities at White Bluff more through the assessment of the members of the WBPOA and less through the funds raised by selling the remaining parcels of undeveloped real estate.  (*Id.* at ¶ 40).  Plaintiffs allege that "many of the representations set forth" in the letter to the WBPOA membership were false, and that the assessment of fees on WBPOA members to pay the costs incurred by other Double Diamond entities was also improper under both Texas law and federal tax law.   (*Id.* at ¶¶ 41-42).  In 2006, the WBPOA entered into a "Capital Improvement Agreement" with Double Diamond that extended the hospitality program for ten years, agreed to pay the assessment's proceeds to Double Diamond, and ended a revenue sharing agreement under which Double Diamond had previously remitted funds to the WBPOA.  (*Id.* at ¶¶ 44-46).  Plaintiffs allege that the WBPOA's funds were paid to Double Diamond entities, in part, through annual "allocations" of approximately $500,000 each, for which no contract existed.  (*Id.* at ¶ 63).

Plaintiffs allege that Defendants made misrepresentations regarding the hospitality program both in the assessments and accompanying communications sent by Defendants Ward and Curran to WBPOA members and in the WBPOA's audited financial statements, which were made available to the members.  (*Id.* at ¶¶ 40, 48, 64-68).

---

[5]  The assessment is related to and sometimes referred to as a "food and beverage credit" or "hospitality credit."  Under the program, a member is required to pay the required semi-annual assessments and would in return be granted a "credit" to be redeemed upon purchase of certain amenities at the White Bluff Resort, such as the golf course, restaurants, hotel, or spa.  (doc. 1, ¶ 39).

In addition to the hospitality and "food and beverage" assessments, Plaintiffs challenge and seek to recover assessments made for golf course maintenance costs. (*Id*. at ¶¶ 53-64). Because the golf courses are not property of the WBPOA (they are owned by White Bluff Golf, Inc., a subsidiary of Double Diamond) Plaintiffs allege that it is improper to impose the costs on the members of the WBPOA. (*Id*. at ¶ 53). Plaintiffs further allege that these assessments are fraudulently inflated, charging fees that "far exceed the typical costs of maintaining similar golf courses." (*Id*. at ¶ 54). Plaintiffs allege that the audited financial statements provided at the WBPOA's annual meetings "fail to truthfully represent that the WBPOA assessments are being used to pay for all costs, including operational costs and capital improvements of the golf course." (*Id*. at ¶ 57).

B.      *The State Court Lawsuit*

On June 15, 2009, the 68th Judicial District Court of Dallas County entered final judgment in a lawsuit in Cause No. DC-07-12490, *Double Diamond, Inc. and White Bluff Property Owners' Association v. Daniel Saturn* (the "State Court Action"). (*Id*. at ¶ 50). In that suit, Double Diamond "alleged various defamation and business disparagement claims" after Daniel Saturn, a property owner, attempted to organize a group of dissatisfied property owners to complain about the actions of Double Diamond and the WBPOA. (*Id*. at ¶ 29). Double Diamond and the WBPOA also sought to recover "unpaid food and beverage assessments from Mr. Saturn. (*Id*. at ¶ 50).

Mr. Saturn responded with counterclaims challenging the validity of the food and beverage assessments. (*Id*.). Each side sought declaratory judgment "on the propriety of the food and beverage assessments." (*Id*.). Following a jury trial, the Court entered judgment for Saturn, finding that the food and beverage assessments were "not in accordance with the bylaws of the White Bluff

Property Owners' Association" and that "assessing mandatory food and beverage assessments from [WBPOA] members and paying such assessments to Double Diamond, Inc. and/or its related companies without such payments being reasonable compensation for services provided to the White Bluff Property Owners' Association, Inc. violates Article 1396-2.24 of the Texas Non-Profit Corporation Act." (*Id.* at Ex. A; doc. 1 ¶ 50). The Court declared the food and beverage assessments to be "void *ab initio* only as to the parties to" the state court lawsuit. (*Id.*). The state court action did not resolve questions related to the other challenged assessments.

As a result of information obtained through discovery and trial of the state court action, Plaintiffs filed this action on September 22, 2009, asserting claims on behalf of all property owners in the White Bluff Resort alleging claims under RICO and state law. (*Id.* at ¶ 70).

## II.  LEGAL STANDARDS

Double Diamond moves to dismiss this class action complaint on three grounds: (1) the *Colorado River* doctrine under which a federal court may abstain from exercising jurisdiction; (2) Rule 12(b)(6), which allows dismissal for failure to state a claim for relief that satisfies the applicable pleading standards; and (3) Rule 12(b)(1), which allows dismissal for lack of subject matter jurisdiction because the plaintiffs lack standing to assert their claims.

A.      *Abstention Under the* Colorado River *Doctrine*

Under the *Colorado River* doctrine, a federal district court has discretion to abstain from exercising jurisdiction where there is a "parallel state court proceeding" and "exceptional circumstances exist that would permit a district court to decline exercising jurisdiction." *Stewart v. W. Heritage Ins.* Co., 438 F.3d 488, 491 (5th Cir. 2006); *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734,

738 (5th Cir. 1999).  A state court proceeding is parallel "where the two suits involve the same parties and same issues." *Am Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250 (5th Cir. 2005).  Notwithstanding the use of the word "same," the court does not require a "precise identity" of issues and parties to satisfy the first prong of the *Colorado River* inquiry.  *RepublicBank Dallas Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987).  The second prong of the *Colorado River* inquiry requires the court to consider whether "extraordinary circumstances" warrant abstention.  The Supreme Court has set forth six factors that may be considered: "(1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction."  *Murphy*, 168 F.3d at 738 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 288, 285-86 (1995)).

    B.    *Dismissal Under Rule 12(b)(6)*

    Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  "A motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'" *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992) (quoting *Ward v. Hudnell*, 366 F.2d 247, 249 (5th Cir. 1966)).  The Court is not, however, "bound to accept as true a legal conclusion

couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations are true (even if doubtful in fact)." *Id.* at 555.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  Rule 12 does "not require[] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face" such that plaintiffs have "nudged their claims across the line from conceivable to plausible." *Id.* at 570.

The sufficiency of the factual allegations must in turn be viewed in light of the applicable pleading standards set forth in Rules 8(a) and 9(b).  Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  *Twombly's* requirements are satisfied if allegations governed by that standard contain sufficient facts, taken as true, to state a claim that is plausible on its face.  Where an element of a claim requires proof of fraud, however, the heightened pleading requirement of Rule 9(b) applies.  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The precise degree of particularity required to sufficiently plead fraud depends on context. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  However, to state a claim for fraud that is plausible on its face, a plaintiff must identify the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bonton v. Archer Chrysler Plymouth,*

*Inc.*, 889 F.Supp. 995, 1004 (S.D. Tex. 1995) (quoting *Tel-Phonic Servs. Inc.*, 975 F.2d at 1139)).

    C.     *Dismissal Under Rule 12(b)(1)*

    A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Where, as here, a motion attacks subject matter jurisdiction based on the face of the complaint, the plaintiff is afforded safeguards similar to those enjoyed when a complaint is challenged under Rule 12(b)(6) for failure to state a claim – the Court must consider the complaint's allegations as true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). In reviewing a facial attack, the Court may consider, in a light most favorable to the plaintiff, the allegations of the complaint and documents referenced therein, as well as matters of public record such as court records. *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Falzett v. Pocono Mountain Sch. Dist.*, 150 F.Supp.2d 699, 701 (M.D. Pa. 2001).

## III. ANALYSIS

    A.     *Abstention or Stay Pursuant to* Colorado River *Doctrine*

    Defendants argue that a dismissal or stay of this action is appropriate under the *Colorado River* doctrine, which allows a federal court to abstain from exercising jurisdiction over cases involving both a parallel state court proceeding and exceptional circumstances. (doc. 15, p. 3); *Colo. River Water Conservation District v. United States*, 424 U.S. 800 (1976).

    "The *Colorado River* abstention doctrine is based on principles of federalism, comity, and conservation of judicial resources. It represents an 'extraordinary and narrow exception' to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.'" *Am. Family Life Assurance Co. v. Anderson*, 228 F.3d 410, 2000 WL 1056303 at * 2 (5th Cir. July 27,

2000) (quoting *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000)).  The initial question in determining the applicability of the *Colorado River* doctrine is whether a parallel state court proceeding exists.

Defendants contend that the State Court Action now on appeal is a parallel proceeding because two of the parties to the State Court Action, Double Diamond and the WBPOA, are "central to all of Plaintiffs allegations in the present action" and "all of Plaintiffs' claims are inextricably dependent on issues and claims that have already been litigated in the State Court Action . . . now on appeal." (doc. 15, p. 5).  Plaintiffs counter that the State Court Action is not parallel because the federal action seeks additional relief based on federal RICO claims brought on behalf of numerous plaintiffs who were not parties to the State Court Action.  (doc. 17, p. 6).  Plaintiffs argue that the State Court Action cannot possibly "dispose of all claims presented in the federal case," in part because "[t]he State Court Action does not provide any monetary relief whatsoever to the thousands of White Bluff property owners who have been defrauded by Double Diamond." (*Id.*).

The Court concludes that the State Court Action is not a parallel proceeding for the purposes of the *Colorado River* doctrine.  Suits are parallel "where the two suits involve the same parties and same issues." *Am Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250 (5th Cir. 2005).  This prong does not require precise identity of parties or issues, but at a minimum, there must be a substantial likelihood that the State Court Action will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).  "Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any

substantive part of the case, whether it stays or dismisses." *Id.* Plaintiffs in this action bring claims for relief on behalf of thousands of property owners whose claims were not adjudicated in the State Court Action based on causes of action not considered in rendering the judgment now on appeal. The State Court Action resulted in a declaratory judgment that the food and beverage assessments did not comply with the WBPOA's bylaws and that they were not proper under the Texas Non-Profit Corporation Act. (doc. 1, p. 36). As a result, the state court declared the food and beverage assessment program to be "void *ab initio* only as to the parties to this suit." (*Id*).

This action requires that the Court resolve significant factual and legal issues that will not be addressed through the pending appeal of the State Court Action. "The pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817. Though many of the claims before this Court involve facts related to the food and beverage assessments – the same subject matter as the State Court Action – Plaintiffs' right to relief will depend largely on additional facts related to alleged RICO predicate acts. Additionally, this action raises claims grounded in allegedly fraudulent maintenance fees and other assessments not addressed in the State Court Action. This action also involves the claims of thousands of putative class members over whom the state court has not asserted jurisdiction. As a result, the appeal of the State Court Action does not constitute a parallel proceeding. Because Defendants have failed to establish a prerequisite for abstention under the *Colorado River* doctrine, Defendants' motion to dismiss or stay this suit on that ground is **DENIED**.

B.    *Dismissal Pursuant to Rule 12(b)*

Plaintiffs allege that Defendants conducted and conspired to conduct the affairs of the Enterprise through a pattern of racketeering activity in violation of the RICO statute, 18 U.S.C. §

1962(c) and (d).  (doc. 1, pp. 24, 26).  "Subsection 1962(c) prohibits persons employed by or associated with any enterprise from conducting or participating in the enterprise's affairs through a pattern of racketeering." *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 121 (5th Cir. 1996).  "Subsection 1962(d) prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c)." *Id.* at 122.

To state a plausible RICO claim, Plaintiffs must allege facts to show "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993).  A RICO "person" may be "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).  "Racketeering activity" includes certain state and federal offenses enumerated in § 1961(1), including mail or wire fraud. *H.J. Inc. v. Nw. Bell Tell. Co.*, 492 U.S. 229, 239 (1989); *Word of Faith*, 90 F.3d at 122.  To assert a claim based on a "pattern of racketeering activity, Plaintiffs must allege "that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc.*, 492 U.S. at 239).  An "enterprise" is broadly defined by the Act, and it "can be either a legal entity or an association-in-fact." *St. Paul Mercury Ins. Co.*., 224 F.3d at 440.  However, a RICO person must be distinct from the RICO enterprise. *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007).

Defendants challenge the sufficiency of Plaintiffs' pleading of the fraud-based predicate acts of mail and wire fraud under the heightened standard set forth by Rule 9(b).  (doc. 15, p. 13). Defendants also dispute that Plaintiffs have alleged a "pattern" of such acts, or that the Complaint properly alleges a RICO "enterprise" that is distinct from the RICO "persons" or separate from the

alleged pattern of predicate acts. Because the predicate acts of fraud are at the foundation of Plaintiffs' claims, the Court will first address the sufficiency of those allegations before considering whether Defendants participated in the Enterprise through a pattern of such acts.

        i.    <u>Sufficiency of Allegations for Fraud-Based RICO Predicate Acts</u>

Rule 9(b) provides "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *Coates v. Heartland Wireless Comms., Inc.*, 26 F.Supp.2d 910, 914 (N.D. Tex. 1998). Because "Rule 9(b)'s particularity requirement applies to pleading fraud as a predicate act in a RICO claim, Plaintiffs must meet the heightened standard of pleading when alleging these fraud-based predicate acts. *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) (citing *Tel-Phonic Servs.*, 975 F.2d at 1138)). "To satisfy Rule 9(b), a plaintiff must at a minimum allege the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby.'" *Bonton*, 889 F. Supp. at 1004 (quoting *Tel-Phonic Servs.*, 975 F.2d at 1139)). Where, as here, multiple defendants are alleged to have contributed to the fraudulent predicate acts, a "plaintiff must 'plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant; the plaintiff is obligated to 'distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.'" *Coates*, 26 F.Supp.2d at 915 (quoting *In re Silicon Graphics, Inc. Secs. Litig.*, 970 F.Supp. 746, 752 (N.D. Cal. 1997)).

Though this burden requires specificity, a "complainant need not, however, state all facts pertinent to a case to satisfy the requirements of Rule 9(b)." *Mitchell Energy Corp. v. Martin*, 616 F.Supp. 924, 927 (S.D. Tex. 1985). "Rule 9(b) does not 'reflect a subscription to fact pleading' and

requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *United States v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).   In alleging a RICO scheme involving mail or wire fraud, it is not necessary to assert that each defendant personally made fraudulent mailings or wires; rather "Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud." *At the Airport*, 428 F.Supp.2d at 61.   Where a "plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud . . . Rule 9(b) 'only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme.'" *Id.*

Plaintiffs allege that Defendants participated in a scheme by which they used the WBPOA to fraudulently assess improper and excessive fees on property owners as a means to generate revenue for Double Diamond and its subsidiaries and for the benefit of the Defendants Ward and Curran. (doc. 1, ¶¶ 81-85).   To satisfy the requirements of Rule 9(b), Plaintiffs must describe the allegedly fraudulent statements or actions with particularity and apprise each defendant of his role in the alleged scheme.   Plaintiffs contend that beginning in December 2003, the WBPOA established a "hospitality program" that was fundamentally based on misrepresentation.   They allege that this program, which assesses fees entitled "food and beverage credit" or "hospitality credit" on each property owner, was announced through a January 2004 letter which outlined the purpose of the disputed funds:  to "maintain" and "improve" the amenities at the White Bluff resort.  (*Id.* at ¶¶ 39, 40).   In contrast with the stated purpose, Plaintiffs allege that Defendants instead assessed fees that were "improperly funneled through the POA to Mike Ward and his Double Diamond Entities." (doc. 17, p. 11; doc 1, ¶ 47).    The scheme was allegedly carried out through the mailing of

- 15 -

"Maintenance Fee Statements," which were sent to WBPOA members in January and July of 2004-2009 (*Id.*). Plaintiffs further allege that the fraud included assessment of inflated golf maintenance fees on WBPOA members. They contend that while "Double Diamond fraudulently represent[ed] to the members that the WBPOA is only paying for golf course 'maintenance' expenses," the members in fact have "paid virtually all the costs associated with operating the golf courses, including the costs of capital improvements and salaries." (*Id.* at ¶ 54). Plaintiffs assert that the allegedly fraudulent assessments together resulted in "annual gross receipts" of "approximately $4,000,000," and that they were assessed "for the purpose of increasing the profitability of Double Diamond and filling the pockets of Defendant Ward." (*Id.* at ¶ 38).

Defendants challenge the sufficiency of Plaintiffs' averments of fraud, arguing that "Plaintiffs' alleged 'fraudulent scheme' is nothing more than an implausible, disjointed collection of allegations of statutory violations and alleged misrepresentations attributed generally to Defendants and directed generally at Plaintiffs and the putative class." (doc 15, p. 15). They contend that the Complaint does not sufficiently identify the fraudulent statements or the actions of each defendant individually. (*Id.* at pp. 16-17).

The Court has reviewed the Complaint and finds that its averments of fraud satisfy Rule 9(b). While the Complaint includes a number of broad, undifferentiated assertions, it also alleges sufficient factual detail to avoid dismissal. The Complaint identifies which assessments and communications are fraudulent, the amount of those assessments and fees, when and at whose direction those assessments and communications were made, and what was obtained as a result. The precise amount by which the assessments were inflated, or the extent to which the payments were reasonable compensation for services provided to the WBPOA are evidentiary matters, and lack of

precision on such matters is not fatal to the Complaint.  Plaintiffs also sufficiently apprised each

defendant of his or its role in the alleged scheme.  *See Cadle Co.*, 779 F.Supp. At 399 (to adequately

state a cause of action for the predicate acts of mail fraud, plaintiff need not tie each defendant to

each offensive mailing, but "must only present enough evidence to connect the defendant to the

fraudulent scheme involving the use of the mails.").   Each of the misrepresentations was allegedly

sent by the WBPOA at the direction of Ward and Curran and for the benefit of Double Diamond

and its related entities.   The Complaint pleads facts sufficient to meet the requirements of Rule 9(b)

and contains "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S.

at 570.  Plaintiffs will have the burden of presenting evidence to support the facts alleged; however,

at this stage, the allegations must be taken as true.  Because Plaintiffs have properly described the

allegedly fraudulent statements and the role of each defendant in the alleged scheme, dismissal of

their RICO claims for failure to plead the predicate acts pursuant to Rule 12(b)(6) is not appropriate.

The Court **DENIES** Defendants' motion to dismiss the Complaint on the asserted ground that it

insufficiently pleads the fraud-based predicate acts of Plaintiffs' RICO claim.

ii.    Pattern of Racketeering Activity

In addition to sufficient pleading of predicate acts, to satisfy the second RICO element

Plaintiffs must allege a "pattern" of such acts.  *In re Burzynski*, 989 F.2d at 742.  "'Racketeering

activity' consists of two or more predicate offenses, defined by the statute to include acts violating

federal wire or mail fraud statutes." *Word of Faith*, 90 F.3d at 122 (quoting 18 U.S.C. § 1961).  This

two-pronged element "requires the plaintiff to plead both that the predicate acts are related to each

other and that they either constitute or threaten long-term criminal activity."  *In re Burzynski*, 989

F.2d at 742 (quoting *H.J. Inc.*, 492 U.S. at 239).  It is this factor of *continuity plus relationship* which

combines to produce a pattern." *H.J. Inc.*, 492 U.S. at 239 (emphasis in original).

Predicate acts are related where the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events." *Id.*; *Word of Faith*, 90 F.3d at 122. Additionally, for a series of related predicate acts to constitute a RICO "pattern of activity," Plaintiffs must also allege that the conduct was sufficiently continuous. "It is 'continuity' that assures a federal cause of action." *In re Burzynski*, 989 F.2d at 742. Continuity may be alleged as "either a closed period of repeated conduct, or an open-ended period of conduct that, 'by its nature projects into the future with a threat of repetition.'" *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc.*, 492 U.S. at 240). A closed period of conduct may be properly pleaded by alleging "a series of related predicates extending over a substantial period of time." *Id.* (citing *H.J. Inc.*, 492 U.S. at 241). An open period of conduct requires allegations of "a specific threat of repetition extending indefinitely into the future," or that "the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* (citing *H.J. Inc.*, 492 U.S. at 242-43).

Defendants contend that the Complaint does not "sufficiently plead a pattern" of predicate acts, arguing that it instead recounts "an implausible, disjointed collection of allegations." (doc. 15, p. 15). Plaintiffs argue that the Complaint describes a scheme of misrepresentation that took place "over the course of several years" and that continues today. (doc. 17, pp. 15-16). Further, the alleged acts are not "part and parcel of a single, otherwise lawful transaction" of the sort alleged in *Word of Faith.* 90 F.3d at 123. The Fifth Circuit has held that the continuity requirement, though related to fraudulent predicate acts, need not meet heightened pleading requirements. *Abraham*, 480 F.3d at 355-56. Accordingly, the Court finds that Plaintiffs alleged continuity sufficient, if

- 18 -

proven, to show a pattern of racketeering activity and **DENIES** Defendants' motion to dismiss on the asserted ground that the Complaint fails to allege a pattern of racketeering activity.

      iii.    <u>RICO Persons and RICO Enterprise</u>

Defendants contend that Plaintiffs have not alleged facts sufficient to establish a RICO enterprise that is "distinct from the defendant "RICO" persons as well as from the predicate acts." (doc. 15, p. 18). "Congress gave the term 'enterprise' a very broad meaning." *United States v. Elliott*, 571 F.2d 880, 897 (5th Cir. 1978) (quoting *United States v. Hawes* 529 F.2d 472, 479 (5th Cir. 1976)). Under the statute, "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "RICO enterprise can be either a legal entity or an association-in-fact." *St. Paul Mercury Ins. Co.*, 224 F.3d at 440. "If the alleged enterprise is an association-in-fact, the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Id.* Plaintiffs allege that Defendants carried out the "illegal assessment scheme" "in connection with the conduct" of an Enterprise consisting of the board of directors of the WBPOA, Defendants Ward and Curran, and Double Diamond (the "Enterprise"). (doc. 1,.¶ 81). They contend that Defendants participated in the affairs of the Enterprise in part through a pattern of racketeering activity that included the acts of mail and wire fraud described above.

Plaintiffs' RICO claims are based upon 18 U.S.C. § 1962(c), which prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Claims based on this provision require "that the RICO person be distinct from the

RICO enterprise." *St. Paul Mercury Ins. Co.*, 224 F.3d at 445.  Defendants argue that Double Diamond Delaware and the White Bluff defendants, as "merely passive recipients of the alleged Hospitality Assessments" did not participate sufficiently to support their liability under the statute. (doc. 15, p. 17).  The proscriptions of the RICO statute have broad reach; the "RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise." *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978).  The statute "makes clear that RICO liability is not limited to those with a formal position in the enterprise," nor does it require "primary responsibility" or "significant control." *Reeves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  It is therefore not necessary for Defendants to have managerial or operational control, or hold any formal position within the Enterprise.  Rather, it is sufficient to allege, as Plaintiffs do, that each participated indirectly in the conduct of the Enterprise by approving, receiving, or communicating the allegedly fraudulent assessments.

Defendants also argue that the alleged Enterprise is not distinct from the RICO persons or the alleged racketeering activities.  (doc. 15, p. 18).  A RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (quoting *United States v. Turkette,* 452 U.S. 576, 583 (1981)).  Further, "[t]he violator of section 1962(c) who commits the pattern of predicate racketeering acts must be distinct from the enterprise whose affairs are thereby conducted." *Old Time Enters. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989).  Defendants argue that the alleged Enterprise is not distinct from the Double Diamond entities or from the allegedly fraudulent acts related to assessments on the WBPOA members.  (doc. 15, p. 18).

The Court concludes that the Plaintiffs allege the necessary distinctions.  Plaintiffs do not

allege that the enterprise exists solely for the purpose of executing the allegedly fraudulent predicate acts.   Plaintiffs allege that "[t]he members of the Enterprise perform certain legitimate and lawful activities that are not being challenged in this Complaint, including the acquisition, control and maintenance of the common properties (roads, swimming pools, tennis courts and parks in the White Bluff Resort) which are owned by the WBPOA." (doc. 1, ¶ 83). The challenged assessments, fees,  and payments allegedly occurred apart from the legitimate activities and communications of the Enterprise.  (*Id*.).  As a result, Plaintiffs have alleged facts that, if true, establish the existence of an enterprise that is distinct from the pattern of racketeering activity.   Further, the overlap between the named defendants and the Enterprise is not fatal to the Complaint.  While an enterprise may not consist solely of a corporation and its employees or officers, Plaintiffs have alleged an Enterprise comprised of additional individuals.  "Although a defendant may not be both a person and an enterprise, a defendant may be both a person and part of an enterprise." *St. Paul Mercury Ins. Co.*, 224 F.3d at 447.  Here, Plaintiffs have alleged an enterprise consisting of Double Diamond entities and employees (such as Ward and Curran) as well as members of the WBPOA board who have no relationship with the other Defendants outside of the work of the Enterprise.  (doc. 1 at ¶ 81).  Thus, Plaintiffs have alleged the existence of an enterprise separate and distinct from any defendant, and the Court **DENIES** Defendants' motion to dismiss on the asserted ground that the Complaint fails to allege a RICO enterprise.

C.      *Dismissal Pursuant to Rule 12(b)(1)*

Defendants alternatively move to dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) on the grounds that they do not have standing to assert their RICO claims.  (doc. 15, p. 21).  Determining standing to assert a RICO claim "entails a two-part inquiry." *Ocean Energy II, Inc. v. Alexander &*

*Alexander,* 868 F.2d 740, 746 (5th Cir. 1989).  First, the court "must determine whether any non-RICO standing requirements apply and have been satisfied."  *Id.*  Second, "if no-RICO standing requirements have been met or if, given the alleged injury, non apply, the RICO plaintiff must show that it suffered injuries 'by reason of' the commission of a predicate act."  *Id.*   Though Defendants cite to the Constitutional standing requirements, they raise no challenge to the sufficiency of the Complaint to meet those fundamental requirements.   (doc. 15, p. 21).   Instead, Defendants challenge the ability of the Complaint to satisfy the statutory standing requirements, arguing that Plaintiffs have not alleged injury "by reason of" the commission of RICO predicate acts.  (doc. 15, p. 21).  Defendants contend that Plaintiffs' have not alleged that their injuries were the factual and proximate result of the alleged predicate acts.  (doc. 15, p. 22).  Defendants also argue that Plaintiffs "lack standing to assert their RICO claims because they lack standing to assert the underlying statutory violations [of the Texas Non-Profit Corporation Act] which are necessary to show that the assessments are 'illegal.'" (*Id.* at p. 23).

Upon review, the Court concludes that Plaintiffs have satisfied the sufficiently pleaded that they were injured "by reason of" the predicate acts of mail and wire fraud.  Plaintiffs have standing "if, and can only recover to the extent that, he has been injured in his business or property by the conduct causing the violation."  *Marriott Bros. v. Gage*, 911 F.2d 1105, 1108 (5th Cir. 1990) (citing *Sedima v. Imrex Co.*, 473 U.S. 479, 495 (1985)).  The statute confers standing on "any person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c).  Plaintiffs are not required to plead that they relied on the allegedly fraudulent material; rather they are only required to allege that they were injured "by reason of" commission of the predicate acts.  *Bridge v. Phoenix Bond & Indem. Co.*, 533 U.S. 639, 128 S.Ct 2131, 2144 (2008).

Here, Plaintiffs assert their own injuries; apart from any injury to the WBPOA, they allege that they were individually and directly injured by the fraudulent assessments that resulted from the alleged racketeering activity.  (doc. 1, ¶¶ 85, 89).  They assert that the alleged predicate acts of mail and wire fraud caused them to pay specific assessments and fees.  Taken as true, Plaintiffs allegations satisfy RICO's statutory standing requirements.  As a result, Plaintiffs have alleged facts sufficient to satisfy the requirements for pleading RICO standing, and the Court **DENIES** Defendants' motion to dismiss on the asserted ground that the Complaint fails to allege standing.

> D.      *State Law Claims*

Defendants also move to dismiss certain of Plaintiffs' claims brought under Texas law, counts 3, 4, 5, and 8.  (doc. 15, pp. 20-21).

Count 3 is a "claim for reimbursement (offensive collateral estoppel" brought against Double Diamond and related corporate defendants.  (doc. 1, ¶¶ 90-91).  "A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."  *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984).  Because a full and fair evaluation of these factors will depend on the positions of the parties and other facts, which will be set forth in the class certification briefing, the Court **DENIES** Defendants' motion.

Counts 4 and 5 allege that Defendants Ward and Curran breached fiduciary duties owed to the WBPOA and misapplied fiduciary property of the WBPOA.  (doc. 1, ¶¶ 92-95).  Defendants argue that Plaintiffs have "no standing to assert claims for duties owed to the WBPOA" and that "there is no private right of action under § 32.45 of the Texas Penal Code."  (doc. 15, p. 26).  To the

extent that Plaintiffs seek to recover under § 32.45 of the Texas Penal Code, the Court **GRANTS** Defendants' motion.   Because Plaintiffs have asserted injury to themselves and do not bring derivative claims on behalf of the WBPOA, the Court cannot conclude that they lack standing. Defendants have not met their burden of showing that such claims are foreclosed under Texas law. As a result, Defendants' motion to dismiss counts 4 and 5 not grounded in the Texas Penal Code is **DENIED**.

In Count 8, Plaintiffs assert a claim for "conspiracy / aiding and abetting" against all Defendants. (doc. 1, ¶¶ 103-104).  Defendants move to dismiss this claim because it does not satisfy the pleading requirements of Rule 8(a) and because "[u]nder Texas law, conspiracy not an independent cause of action.  (doc. 15, p. 20-21).  Plaintiffs argue that Texas law does not bar a separate claim for conspiracy or aiding and abetting. (doc. 17, pp. 21-22). The Court concludes that Plaintiffs' brief and conclusory allegations do not provide sufficient notice to apprise the Defendants of what conduct by which individual gives rise to liability for which claim.  Accordingly, Defendants' motion to dismiss Plaintiffs claim for conspiracy / aiding and abetting (Count 8) is **GRANTED**.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to stay or dismiss this action as follows:

The State Court Action is not parallel proceeding as required to justify abstention or other relief under the *Colorado River* doctrine, and the Court **DENIES** Defendants' motion to stay or dismiss the case on that ground.

Plaintiffs have pleaded facts sufficient to state claims for relief under 18 U.S.C. § § 1962(c) and (d) that are plausible on their face.  As a result, the Court **DENIES** Defendants' motion to

dismiss Count 1 and Count 2.

The Court **DENIES** Defendants' motion to dismiss Count 3.

The Court **DENIES** Defendants' motion to dismiss Count 4 and Count 5, except to the extent that, by those Counts, Defendants seek to recover under § 32.45 of the Texas Penal Code.

The Court **GRANTS** Defendants' motion to dismiss Count 8.

**SO ORDERED**

**SIGNED:** May 10, 2010

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE